UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH SPINUCCI,                    *
                                    *
        Petitioner,                 *
                                    *
        v.                          *        Civil Action No. 16-cv-12513-ADB
                                    *
OSVALDO VIDAL,                      *
                                    *
        Respondent.                 *

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

        On June 22, 2006, Petitioner Joseph Spinucci ("Petitioner") was convicted of numerous

counts related to an attack on Ryan Sullivan ("Sullivan"), Jules Stevens ("Stevens"), and

William Tighe ("Tighe"), including first and second degree murder related to the death of

Sullivan; armed assault with intent to murder Stevens and Tighe; assault and battery of Stevens

by means of a dangerous weapon, causing serious bodily injury; and assault and battery of Tighe

by means of a dangerous weapon.  [Supplemental Answer ("S.A.") at 1–2].  Presently before the

Court is Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  [ECF No.

1].  Petitioner challenges his convictions, claiming (1) that the state trial court's refusal to

instruct the jury on manslaughter based on provocation or sudden combat violated Due Process;

(2) that the state courts' (Middlesex Superior Court and Massachusetts Supreme Judicial Court

("SJC")) findings regarding provocation were unreasonable because the facts demonstrated that

the victim's conduct was sufficiently provocative to justify a manslaughter instruction; (3) that

the jury instructions permitted an inference of malice from the use of a dangerous weapon and

contributed to a finding of guilt on a joint venture theory of murder; and (4) that there was

insufficient evidence for a guilty verdict for an assault on Stevens, making the decision contrary

to and an unreasonable application of clearly established federal law.  [<u>Id.</u> at 16–17].  Having reviewed the parties' submissions, the petition for a writ of habeas corpus, [ECF No. 1], is <u>DENIED</u>.

## I.     FACTUAL BACKGROUND

When reviewing habeas petitions, the Court presumes that factual determinations made by state courts are correct.  28 U.S.C. § 2254(e)(1); <u>Rashad v. Walsh</u>, 300 F.3d 27, 35 (1st Cir. 2002).  The following summarizes the facts set forth by the SJC in <u>Commonwealth v. Spinucci</u>, 37 N.E.3d 1084 (Mass. 2015).

On the evening of July 1, 2004, Petitioner, co-defendant Van Louis Gustave ("Gustave"), and their respective girlfriends, Claudine Dyer ("Dyer") and Danielle Leblanc ("Leblanc"), watched the Trum Field fireworks show from a garage roof on Albion Street in Somerville. <u>Spinucci</u>, 37 N.E.3d at 1087.  All four attendees had been drinking before getting together and continued to drink beer and smoke marijuana during the show.  <u>Id.</u>  Gustave and Leblanc had also taken several Klonopin pills.  <u>Id.</u>  On their way to the viewing spot, Leblanc, witnessed by Petitioner, asked for Gustave's knife in case they ran into someone that might cause them "problems," and Gustave answered, "No."  <u>Id.</u>  Dyer also asked Petitioner whether he had a knife and whether she could hold it, and Petitioner likewise answered, "No."  <u>Id.</u>

After the fireworks concluded, the four walked down Cedar Street, at which point Tighe came running towards them.  <u>Spinucci</u>, 37 N.E.3d at 1087.  Leblanc confronted Tighe about selling drugs to her younger brother, and Tighe "came up very close" to Leblanc, "shouting and threatening her."  <u>Id.</u>  Dyer then punched Tighe in the face, who retaliated by pushing her into a nearby fence.  <u>Id.</u>  While this was taking place, Sullivan and Stevens walked down the street and stood behind Tighe, whom they knew through Tighe's younger brother.  <u>Id.</u>  Sullivan was sixteen

years old and Stevens was seventeen.  Id. at 1088.  Sullivan and Stevens said nothing, carried no weapons, and did not contribute to the altercation; Tighe also did not have a weapon.  Id. at 1087.

After Tighe pushed Dyer, Gustave and Petitioner approached with their knives displayed. Spinucci, 37 N.E.3d at 1087.  Tighe turned and ran away down Warwick Street, yelling back to Sullivan and Stevens to do the same.  Id.  Petitioner and Gustave followed.  Id.  Petitioner caught up to Tighe and "stabbed him with a knife in the back, inflicting a superficial wound" before Tighe successfully ran away.  Id.  Petitioner and Gustave then turned their attention to Sullivan and Stevens.  Id.  Gustave grabbed Stevens and stabbed him in the side, causing him to fall to the ground.  Id.  Petitioner did not participate in the attack of Stevens, but instead "connected with Sullivan," with Petitioner crouching over and repeatedly stabbing Sullivan in the stomach area, after he had fallen to the ground.  Id.  at 1087–88.  Gustave joined Petitioner in stabbing Sullivan, who appeared to be fighting back, and Leblanc kicked Sullivan in the head several times.  Id. at 1088.  Dyer may have also kicked Sullivan.  Id.

Tighe's stepfather, Michael McCormack ("McCormack"), was in his nearby backyard on Warwick Street when the fight took place.  Spinucci, 37 N.E.3d at 1088.  He heard a "young male voice say, 'Get off of me.  Leave me alone,'" leading McCormack to run down his driveway towards the group to investigate.  Id.  When McCormack saw Petitioner and Gustave "bending over Sullivan and Stevens," he ran, swearing, towards Petitioner and Gustave and "bowled them over."  Id.  Petitioner, Gustave, Leblanc, and Dyer ran away.  Id.  As the group ran, Dyer asked "why 'that kid' was bleeding, and Gustave responded, 'Because we just stabbed them.  We just stabbed them.'"  Id.  Petitioner said "I'm on probation . . . I can't believe this."  Id.  A resident on a porch heard Petitioner say, "Hurry the fuck up.  I just stabbed three people,

three guys, and I'm going to jail for three years" as the group ran by.  Id.

McCormack and his wife, Tighe's mother, called 911 and tended to the two victims who were still at the scene, whom they recognized as Sullivan and Stevens.  Spinucci, 37 N.E.3d at 1088.  Sullivan died within an hour of arriving at the hospital.  Id.  Stevens lost a kidney and spent thirty days recovering in the hospital.  Id.

## II.    PROCEDURAL BACKGROUND

In September 2004, a Middlesex County grand jury returned indictments against Petitioner and Gustave for five offenses related to the attacks.  Spinucci, 37 N.E.3d at 1088.  Petitioner and Gustave were tried separately.  Id.  In June 2006, a Middlesex Superior Court jury found Petitioner guilty of the first degree murder of Sullivan on the theory of extreme atrocity or cruelty (Count One); second degree murder of Sullivan on the theory of deliberate premeditation (Count Two); armed assault with intent to murder Stevens and Tighe (Count Three); assault and battery of Stevens by means of a dangerous weapon, causing serious bodily injury (Count Four); and assault and battery of Tighe by means of a dangerous weapon (Count Five).  [S.A. at 1–2].  Petitioner was sentenced to life in prison without parole on Count One, nine to ten years on Count Four, and seven to eight years on Count Five to run on and after the sentence for Count Four but concurrently with the sentence for Count One.  [Id. at 1–2, 8].  Counts Two and Three were placed on file with Petitioner's consent.  [Id. at 279].

Petitioner appealed his conviction to the SJC on June 27, 2006, [S.A. at 8], but his appeal was stayed on November 30, 2007, when Petitioner filed a *pro se* post-trial Rule 25(b)(2) motion for a required finding of not guilty or directed lesser verdict with the Superior Court.  [S.A. at 8–9, 65–185].  Because the issues raised in that motion included the ineffective assistance of counsel, the Superior Court treated Petitioner's motion as a Rule 30(b) motion.  [Id. at 280].  In

4

addition to his ineffective assistance claim, Petitioner's motion for a required finding of not guilty asserted that no rational trier of fact could conclude, beyond a reasonable doubt, that he attacked and killed Sullivan, [id. at 69], and that no rational trier of fact could conclude, beyond a reasonable doubt, that he was more than merely "in the vicinity of the crime, and possibly in the company of the guilty party" in connection with the attack on Stevens, which he argued was insufficient for conviction under a joint venture theory, [id. (citing Commonwealth v. Echavarria, 703 N.E.2d 1137, 1141 (Mass. 1998))]. Lastly, Petitioner contended that even if the SJC found the evidence sufficient to prove he was guilty of murder, the evidence was insufficient to convict him of murder in the first degree because it did not warrant a finding of deliberate premeditation or extreme atrocity or cruelty. [Id. at 72]. The Superior Court denied Petitioner's motion on December 18, 2008. [Id. at 280].

Petitioner's appeal of the denial of this motion was consolidated with his direct appeal of his conviction to the SJC. Spinucci, 37 N.E.3d at 1089 n.6. In his appeal of the denied motion, Petitioner claimed that the capital conviction review statute, Mass. Gen. Laws c. 278, § 33E, entitled him to relief because of allegedly improper statements made by the prosecution during closing arguments, errors made by the trial judge in instructing the jury, and other mitigating factors. Id. at 1095.[1]

The SJC affirmed the lower court's judgments on September 29, 2015. Spinucci, 37 N.E.3d at 1095. Petitioner now seeks habeas relief pursuant to 28 U.S.C. § 2254, [ECF Nos. 1, 27], which Respondent Osvaldo Vidal ("Respondent") opposes, [ECF No. 33]. In response to Respondent's memorandum in opposition, Petitioner submitted a reply brief. [ECF No. 38].

---

[1] The SJC did not address Petitioner's ineffective assistance of counsel claim in its opinion, nor does Petitioner raise this as a ground for relief in his petition.

### III.    LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief on claims previously adjudicated on the merits only after the petitioner has exhausted all available state remedies.  28 U.S.C. § 2254(c); see Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (explaining that § 2254(b)(1)(A) requires that state prisoners give state courts a fair opportunity to review their claims and correct alleged constitutional violations before review by a federal court).  A claim for habeas relief is not exhausted unless it has been "fairly and recognizably" presented in state court.  Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)).  In other words, "a petitioner must have tendered his federal claim [in state court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question."  Id. (internal quotation marks and citations omitted).  Further, AEDPA permits habeas relief only if the previous adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion contrary to that reached by the Supreme Court on a question of law, or if the court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A petitioner must show that the state court decision applied clearly established federal law in a way that was "objectively unreasonable."  Roden, 753 F.3d at 299 (quoting White v. Woodall, 572

U.S. 415, 419 (2014)) (internal quotation marks omitted).  A state court unreasonably applies federal law when it "correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply." Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009).  An unreasonable application requires "some increment of incorrectness beyond error."  Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (citation omitted).

Thus, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011).  The federal court is limited to deciding whether the conviction violated the Constitution, laws, or treaties of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241).  Furthermore, "[e]rrors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised."  Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (citing Estelle, 502 U.S. at 67–68).  "'[T]he gap between erroneous state court decisions and unreasonable ones is narrow,' and 'it will be the rare case that will fall into this gap.'" O'Laughlin v. O'Brien, 568 F.3d 287, 299 (1st Cir. 2009) (quoting Evans v. Thompson, 518 F.3d 1, 6 (1st Cir. 2008)).

AEDPA presumes the state court's factual findings are correct and requires rebuttal by the petitioner with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see Cullen v. Pinholster, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof."); see also

Linton v. Saba, 812 F.3d 112, 116 (1st Cir. 2016) ("We must accept the state court findings of fact unless convinced by clear and convincing evidence that they are in error." (citations and internal punctuation omitted)).  Those "factual findings" and "facts" are those "'basic, primary, or historical facts,' such as witness credibility and recitals of external events.'"  Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (quoting Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001)).

## IV.    DISCUSSION

Petitioner raises four grounds for relief in his memorandum in support of his petition, [ECF No. 27], all of which are based on alleged Due Process violations: (1) the trial court's refusal to instruct the jury on manslaughter based on provocation or sudden combat was unreasonable ("Ground One"); (2) the trial court's finding of an absence of provocation was based on an unreasonable determination of the facts ("Ground Two"); (3) the trial court's instructions regarding joint venture murder allowed the jury to find Petitioner guilty without sufficient evidence of malice ("Ground Three"); and (4) Petitioner's conviction of assault and battery by causing serious bodily injury to Stevens was based on insufficient evidence ("Ground Four"), [ECF No. 1 at 16–17; ECF No. 27 at 8–21].

Respondent opposes habeas relief, arguing that the SJC's determination of the facts and its application of clearly established federal law were reasonable.  [ECF No. 33 at 3].

### A.    GROUND ONE: Trial Court's Refusal to Instruct Jury on Manslaughter Was Reasonable

Petitioner claims that the trial judge's refusal to instruct the jury on manslaughter, which requires a finding of either provocation or sudden combat, was unreasonable after "finding" evidence which constituted provocation.  [ECF No. 38 at 4].  He argues that the SJC's finding that the trial judge did not err in refusing to instruct the jury on manslaughter on the basis of

provocation or sudden combat was an unreasonable application of clearly established federal law, thereby denying him Due Process.  [ECF No. 27 at 8].  Respondent contends that jury instructions are a matter of state law which should not form the basis for habeas relief, and that the state courts reasonably rejected any associated claim of a Due Process violation.  [ECF No. 33 at 15–18].

      1.    <u>It Was Not Unreasonable for the Trial Judge and the SJC Not to Require the Prosecution to Prove Absence of Provocation Beyond a Reasonable Doubt</u>

Petitioner claims the SJC unreasonably applied "clearly established federal law" as outlined in <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 704 (1975).  He asserts that <u>Mullaney</u> requires the prosecution to prove absence of provocation beyond a reasonable doubt to justify the trial court's denial of a requested manslaughter instruction.  [ECF No. 27 at 12].  As Respondent argues, Petitioner misstates the law: the prosecution was required only to prove all elements of first-degree murder beyond a reasonable doubt.  [ECF No. 33 at 16]; <u>see</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979) ("[N]o person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." (quoting <u>In re Winship</u>, 397 U.S. 358, 364 (1970))).

The prosecution is not required to prove the absence of provocation beyond a reasonable doubt in every circumstance.  Only where "the evidence raises the possibility that the defendant may have acted on reasonable provocation" must the Commonwealth "prove, and the jury find[] beyond a reasonable doubt that the defendant did not act on reasonable provocation."  <u>Figueroa v. Gelb</u>, No. 13-cv-13008, 2016 WL 3147354, at *11 (D. Mass. Apr. 20, 2016) (internal citation omitted), <u>report and recommendation adopted</u>, No. 13-cv-13008, 2016 WL 3149652 (D. Mass.

June 3, 2016).  The SJC expressly found that the evidence did *not* rise to the level of reasonable provocation so as to mitigate Petitioner's conduct.  <u>Spinucci</u>, 37 N.E.3d at 1089 n.8 ("[T]he physical contact between the [Petitioner] and Sullivan as described by Leblanc was not sufficient to warrant an instruction."); <u>see also</u> Section IV.B, <u>infra</u>.

<u>Mullaney</u> is inapposite as its holding turned on the application of a Maine statute that unacceptably lessened the prosecution's evidentiary burden.  <u>See</u> 421 U.S. at 698–701.  The effect of the Maine statute in <u>Mullaney</u> was to require the *defendant* to prove provocation beyond a reasonable doubt, in contravention of established Supreme Court precedent requiring that the prosecution bear the burden of proving all the elements of a charged offense.  421 U.S. at 698–701 ("In <u>Winship</u> the ultimate burden of persuasion remained with the prosecution, although the standard had been reduced to proof by a fair preponderance of the evidence.  In this case [<u>Mullaney</u>], by contrast, the State has affirmatively shifted the burden of proof to the defendant." (citing <u>In re Winship</u>, 397 U.S. at 370–72)).

Because the evidence did not rise to the level of reasonable provocation, the Court finds that it was reasonable to not require the prosecution to prove the absence of provocation beyond a reasonable doubt.

### 2.   <u>The Evidence Did Not Require the Trial Court to Provide a Lesser Offense Instruction</u>

The trial court was not required to instruct the jury on the lesser offense of manslaughter on the basis of provocation or sudden combat.  <u>See</u> [ECF No. 33 at 16–17].  "As a general rule, improper jury instructions will not form the basis for federal habeas corpus relief," <u>Niziolek v. Ashe</u>, 694 F.2d 282, 290 (1st Cir. 1982) (citing <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)), and "the absence of such [a lesser offense] instruction 'in a noncapital case rarely, if ever, presents a constitutional question,'" <u>Tata v. Carver</u>, 917 F.2d 670, 672 (1st Cir. 1990) (quoting

Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990)).  "Relief through a habeas corpus petition is

proper only where 'the ailing instruction by itself so infected the entire trial that the resulting

conviction violates due process.'"  Rosado v. Allen, 482 F. Supp. 2d 94, 114 (D. Mass. 2007)

(quoting Estelle, 502 U.S. at 72).

> Further,
>
> [b]ecause the Supreme Court has not decided whether a noncapital defendant has a
> due process right to receive [a lesser included offense] instruction . . . the most that
> a noncapital defendant could assert under the Supreme Court's precedent is that a
> lesser included offense instruction is required if warranted by the evidence.

Paulding v. Allen, 393 F.3d 280, 283 (1st Cir. 2005); see also Garcia v. Russo, 844 F. Supp. 2d

187, 190 (D. Mass. 2011) (denying habeas petition after noting that the SJC found a lack of

evidence to support a lesser included offense instruction).  Because the SJC reasonably

determined that the evidence did not warrant an instruction on manslaughter on the basis of

provocation or sudden combat, see infra Section IV.B, the failure to give the instruction does not

warrant habeas relief.

### 3.   The SJC Did Not Err in Its Analysis of Sudden Combat

Citing Commonwealth v. Webster, Petitioner alleges that there existed grounds for a

manslaughter instruction based on the theory of "sudden combat."  [ECF No. 27 at 13 (citing

Commonwealth v. Webster, 5 Cush. 295, 308 (1850))].  Petitioner argues that the SJC's decision

that it was not error for the trial court to fail to instruct on manslaughter was based entirely on its

analysis of provocation and that the SJC failed to consider the alternative theory of sudden

combat.  [ECF No. 27 at 11–13; ECF No. 38 at 1–2].  Respondent avers that the distinction

between manslaughter based on provocation versus sudden combat is "artificial" because the

trial court "treated the manslaughter instruction request as based on evidence of provocation *by*

sudden combat."  [ECF No. 33 at 16 n.8].

"The mitigating circumstances of reasonable provocation and sudden combat are so closely related that 'much of our case law treats them indistinguishably.'"   Commonwealth v. Howard, 91 N.E.3d 1108, 1114 (Mass. 2018) (quoting Commonwealth v. Camacho, 36 N.E.3d 533, 546 n.19 (Mass. 2015)).   "[F]or sudden combat to be the basis of a voluntary manslaughter instruction the victim . . . must attack the defendant or at least strike a blow against the defendant."   Id. at 1115 (quoting Commonwealth v. Espada, 880 N.E.2d 795 (Mass. 2008)).   As discussed in Section IV.B, infra, there was no evidence that any of the victims attacked or struck a blow against Petitioner prior to him stabbing them.   Petitioner has therefore failed to demonstrate that the evidence warranted a lesser included offense instruction.   See Paulding, 393 F.3d at 283; Spinucci, 37 N.E.3d at 1091 (noting the lack of a causal link between "heat of passion on the defendant's part resulting from" his interactions with the victims).   Accordingly, there was no Due Process violation.   See Tata, 917 F.2d at 672.

**B.    GROUND TWO: The SJC's Finding of No Error by the Trial Court in Determining Insufficient Evidence of Provocation Was a Reasonable Factual Determination**

As a second ground for relief, Petitioner argues that the SJC and trial court's findings of an absence of provocation was based on an unreasonable determination of the facts.   [ECF No. 27 at 13–15].   Respondent counters that the SJC's determination of facts was reasonable, and that Petitioner has not offered evidence to rebut the presumption that the state courts' factual determinations were correct.   [ECF No. 33 at 18–20].

Petitioner reiterates his post-trial argument that the trial judge found that Sullivan jumped on Petitioner's back and that this finding was sufficient to establish provocation.   [ECF No. 27 at 14].   The language relied on by Petitioner is found in a footnote in the SJC's opinion.   See Spinucci, 37 N.E. at 1089 n.7.   In that same footnote, however, the SJC corrected Petitioner,

noting that the evidence at trial could not support such a finding of fact.  Id.[2]  The confusion

arises from the fact that in its post-trial ruling, the trial court mistakenly described Leblanc as

having testified to seeing Sullivan jump on Petitioner's back.  Id.  As the SJC noted, however,

Leblanc only testified to seeing a "third man" jump on Petitioner without identifying that person.

Id.; see also [ECF No. 33 at 19].

Both provocation and sudden combat theories require the victim to attack the defendant.

See Howard, 91 N.E.3d at 1114 (stating victim must attack or at least strike defendant to qualify

as sudden combat); Commonwealth v. Ruiz, 817 N.E.2d 771, 781–82 (2004) (stating that

"provocation must come from the victim" and finding that victim slapping and jumping on

defendant was not sufficient provocation).  Even so, "physical contact between a defendant and a

victim is not always sufficient to warrant a manslaughter instruction, even when the victim

initiated the contact."  Commonwealth v. Rodriquez, 958 N.E.2d 518, 526 (Mass. 2011) (quoting

Commonwealth v. Walden, 405 N.E.2d 939, 944 (1980)).  Petitioner has failed to identify

evidence that Sullivan or the other victims struck or attacked him so as to establish adequate

provocation or sudden combat.  In addition, as the SJC noted, assuming *arguendo* that the court

---

[2] The full text of the SJC's footnote reads:

> The defendant contends that the judge found as a fact that Danielle Leblanc saw
> Ryan Sullivan jump on the defendant's back.  The judge made no such finding.  In
> his posttrial ruling, the judge summarized and discussed Leblanc's trial testimony,
> and described Leblanc as having testified that she saw "a third man" jump on
> Spinucci's back.  The judge referred to Leblanc's "testimony that she saw Sullivan
> jump on Spinucci's back before Spinucci thr[e]w him off" (emphasis added).
> However, in her testimony, Leblanc never identified the man.  Nor could the judge
> have made a finding that Leblanc saw Sullivan jump on the defendant's back, given
> that at the evidentiary hearing held on the defendant's posttrial motion, the only
> person who was sworn and testified as a witness was the defendant's trial counsel,
> whose testimony did not refer at any point to Leblanc's alleged observation.

Spinucci, 37 N.E. at 1089 n.7.

had credited Leblanc's statement that someone, even Sullivan, had jumped on Petitioner's back, his claim would still fail.  Because there was "no evidence of contact between the defendant and Sullivan following the alleged jump on the defendant's back," Petitioner could not have been provoked by the alleged jump, as he had already stabbed Tighe and Sullivan by that point in the altercation.  Spinucci, 37 N.E.3d at 1091.

Habeas relief based on an error in the state court's determination of facts is warranted only when the state court's findings are shown to be unreasonable by clear and convincing evidence.  28 U.S.C. § 2254(d), (e)(1); see also Linton, 812 F.3d at 116 (requiring "clear and convincing evidence" that state court findings of fact are in error).  The SJC and trial court's findings concerning the absence of provocation or sudden combat were based on reasonable determinations of fact, and therefore do not provide a basis for habeas relief.

## C.   GROUND THREE: Trial Court's Instructions on Joint Venture Did Not Allow an Inference of Malice Without Sufficient Evidence

As a third ground for relief, Petitioner argues that the trial court's instruction that the jury could infer malice by the use of a dangerous weapon contributed to the jury's finding of guilt of joint venture murder without sufficient evidence of malice.  [ECF No. 27 at 16–19].  Respondent argues that jury instructions are matters of state law not cognizable on habeas review, and that the state courts reasonably rejected the claim that Petitioner's constitutional rights were violated where the instructions given did not allow the jury to infer malice by the use of a dangerous weapon.  [ECF No. 33 at 20–21].

Petitioner misstates the instruction he is challenging by claiming that it invited the jury to infer malice: "if a defendant brought a weapon to the scene and used it, you may infer malice . . . ." [ECF No. 27 at 18].  Instead, the trial court instructed the jury that

> [i]n determining whether the Commonwealth has proven this third meaning of malice, you must consider the defendant's actual knowledge of the circumstances at the time that he acted.  Where there is evidence that a person brought a dangerous weapon to a scene and used the dangerous weapon on another, you may consider that evidence as relevant in proving malice.

Spinucci, 37 N.E.3d at 1092.  This instruction invited the jury to consider whether the weapon was brought to the scene or not as part of its determination of whether the defendant acted with malice.  Though the jury instruction therefore permitted the jury to consider whether Petitioner brought a dangerous weapon to the scene and used it, it did not instruct that such a finding would be sufficient to find malice.

Again, improper jury instructions do not provide a basis for federal habeas corpus relief, Niziolek, 694 F.2d at 290, unless the errors "so infected the entire trial that the resulting conviction violates due process," Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 146).  Read properly and in the context of the jury instructions as a whole, Petitioner has failed to establish that the trial court's instructions were improper.  See Gagne v. Meachum, 460 F. Supp. 1213, 1217–18 (D. Mass. 1978), aff'd, 602 F.2d 471 (1st Cir. 1979) ("The practice of examining the giving or the failure to give a jury instruction in the context of the charge as a whole is firmly established." (citing United States v. Park, 421 U.S. 658, 674 (1975), Boyd v. United States, 271 U.S. 104, 107 (1926), and United States v. Harrigan, 586 F.2d 860 (1st Cir. 1978))).

Finally, Petitioner argues that the instruction on joint venture instructed the jury that they could find Petitioner acted with malice if they found that Gustave used a weapon.  [ECF No. 27 at 18].  As the SJC noted, "the instruction that the [trial court] gave is most reasonably understood as referring to defining malice directly only in connection with the defendant."

Spinucci, 37 N.E.3d at 1092.  The jury was properly instructed that they must "consider the defendant's intent on its own, not as an automatic transfer of the intent of the coventurer."  Id. "[I]n reviewing an ambiguous instruction . . . we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). Petitioner has not established, and the Court does not find, that there is such a reasonable likelihood here.

> **D.     GROUND FOUR: The SJC Did Not Err in Denying Petitioner's Claim of Insufficient Evidence for Guilty Verdict Regarding Convictions for Assault on Stevens**

As a fourth ground for relief, Petitioner argues that his conviction for assaulting Stevens violated his constitutional right to Due Process because no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  [ECF No. 27 at 19].   Respondent answers that the SJC's determination that the evidence was sufficient for a jury to convict was not unreasonable and that the conviction was based on sufficient evidence.  [ECF No. 33 at 22–27].

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. at 364.  "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319.  "The real question is whether the state court decision is 'objectively unreasonable' in its assessment that the weight of the evidence is sufficient under Jackson to support conviction."  Hurtado v. Tucker, 245 F.3d 7, 18 (1st Cir. 2001) (citing Williams, 529 U.S. at 410).  "In this context, 'unreasonable' means that the decision 'evinces some increment of incorrectness beyond mere

error.'" <u>Roman v. Mitchell</u>, 924 F.3d 3, 7 (1st Cir. 2019) (quoting <u>Leftwich v. Maloney</u>, 532 F.3d 20, 23 (1st Cir. 2008)).

The SJC found that the evidence considered as a whole was sufficient to warrant the jury's guilty verdict on this charge.  <u>Spinucci</u>, 37 N.E.3d at 1094.  "The verdict was necessarily premised on a determination by the jury that the defendant was acting solely as a joint venturer with Gustave, because the undisputed evidence was that Stevens was stabbed only by Gustave." <u>Id.</u>  "The test [for joint venture] is whether each defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." <u>Commonwealth v. Longo</u>, 524 N.E.2d 67, 70 (Mass. 1988) (quoting <u>Commonwealth v. Bianco</u>, 446 N.E.2d 1041, 1047 (Mass. 1983)).  "This agreement need not be made in advance: 'an anticipatory compact is not necessary for joint venture liability, as long as at the climactic moments the parties consciously acted together in carrying out the criminal endeavor.'" <u>Allison v. Ficco</u>, 284 F. Supp. 2d 182, 192 (D. Mass. 2003), <u>aff'd</u>, 388 F.3d 367 (1st Cir. 2004) (quoting <u>Commonwealth v. Allison</u>, 751 N.E.2d 868, 879 (Mass. 2001)).

The SJC stated that the evidence presented permitted a reasonable juror to find that the elements of the crime as a joint venture were fulfilled.  Specifically:

> that the defendant and Gustave were close friends; that the two had come to the scene together with their respective girl friends; that the two took out and displayed their knives at the same time to confront the victim Tighe; and that the two chased the three victims—Tighe, Stevens, and Sullivan—and they both joined in physically attacking Sullivan.  The attacks on all the victims took place in a very short period of time, and at least the attacks on Sullivan and Stevens took place in a circumscribed physical area: when the police arrived, Stevens and the victim Sullivan were lying on the ground within a few feet of each other.

<u>Spinucci</u>, 37 N.E.3d at 1094.

Petitioner claims that he was solely interested in Tighe at the time Stevens was attacked by Gustave, and that he did not know Stevens and was therefore not a culpable participant in the crime.  [ECF No. 27 at 21].  These arguments, however, do not negate the elements of joint venture culpability which the jurors determined were satisfied by the evidence presented to them. This evidence permitted a reasonable juror to conclude that Petitioner was present when Stevens was attacked, that Petitioner knew Gustave intended to commit the crime, and that Petitioner was willing and available to help Gustave in the attack on Stevens if necessary.  It would not have been unreasonable for the jury to find that Petitioner was in agreement with Gustave because, "at the climactic moments the parties consciously acted together in carrying out the criminal endeavor."  Allison, 284 F. Supp. 2d at 192.  The SJC was therefore not objectively unreasonable in its determination that a rational trier of fact could find that the elements of the crime were satisfied beyond a reasonable doubt.  See Hurtado, 245 F.3d at 18 (habeas court must consider whether state court's decision is objectively unreasonable).

V.      **CONCLUSION**

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus, [ECF No. 1], is <u>DENIED</u>.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner.  Rules Governing Section 2254, Cases, R. 11(a).  The Court declines to grant a certificate of appealability to Petitioner.

        **SO ORDERED.**

May 6, 2020                                              /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE